**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OUMAR SISSOKO; JULIE SISSOKO,
     *Plaintiffs-Appellees,*

   v.

LOYDA R. ROCHA; UNITED STATES OF
AMERICA,
     *Defendants-Appellants.*

No. 02-56751

D.C. No.
CV-98-07010-ABC

OUMAR SISSOKO, an individual; JULIE
SISSOKO, an individual,
     *Plaintiffs-Appellees,*

   v.

MICHAEL B. MUKASEY, Attorney
General of the United States; U.S.
IMMIGRATION & NATURALIZATION
SERVICE; DORIS MEISSNER, formerly
Commissioner, United States INS;
RICHARD ROGERS, District Director,
United States INS; FOUR UNKNOWN
NAMED OFFICERS, of the United
States Immigration and
Naturalization Service; UNITED
STATES; U.S. PUBLIC HEALTH
SERVICES; JOSEPH CHEN, MD;

No. 03-55667

D.C. No.
CV-98-07010-ABC

ORDER AND
OPINION

14945

UNKNOWN NAMED EMPLOYEES OF THE
UNITED STATES PUBLIC HEALTH
SERVICES,
                              *Defendants,*

                    and

LOYDA R. ROCHA, Immigration
Inspector, United States INS,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
March 1, 2004—Pasadena, California

Filed November 15, 2007

Before: Otto R. Skopil, Jr., John T. Noonan, and
Marsha S. Berzon, Circuit Judges.

Order;
Opinion by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Skopil

**COUNSEL**

Robert M. Loeb, Richard A. Olderman and Anne Murphy, Civil Division, Appellate Staff, U.S. Department of Justice, Washington, D.C., for the defendants-appellants.

Martin Simone, Leonard M. Roos and Helen Wong, Frank, Greenberg, Simone & Stefanski, Los Angeles, California, for the plaintiffs-appellees.

**ORDER**

The opinion filed on March 16, 2006 is hereby withdrawn and replaced by this concurrently filed opinion. The petition for rehearing en banc is denied as moot.

**OPINION**

BERZON, Circuit Judge:

The factual and procedural background of these appeals is set out in our now-withdrawn opinion. *See Sissoko v. Rocha*,

440 F.3d 1145, 1149-53 (9th Cir. 2006). We adopt the "scope of review" section of our prior opinion, *id.* at 1153-54, and affirm the district court's denial of Rocha's motion under Fed. R. Civ. P. 59(e) with respect to her newly raised legal issue concerning *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Rocha contends that the district court lacked subject-matter jurisdiction over the Sissokos' Fourth Amendment-based damages claim for false arrest. *See* 8 U.S.C. § 1252(g) ("Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . against any alien under this Act."). Appended to Rocha's second petition for rehearing is a Form I-860 "Notice and Order of Expedited Removal." Rocha filled out the top half of the Form I-860, "Determination of Inadmissibility," but not the bottom half, "Order of Removal under Section 235(b)(1) of the Act." Why this happened is now evident: Sissoko indicated at his August 1997 inspection that he had a fear of persecution if returned to Senegal. Accordingly, Rocha was required to refer him for an interview by an asylum officer. *See* 8 C.F.R. § 235.3(b)(4) ("If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer . . . ."). At this juncture, the mandatory detention provision contained in 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) applied: "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a

fear, until removed."**1** Ultimately, Sissoko never had a credible fear interview because he was issued a Notice to Appear and placed in regular removal proceedings.

**[1]** Considering these circumstances, particularly the existence in the record of a half-completed Form I-860, we conclude that Sissoko's detention arose from Rocha's decision to commence expedited removal proceedings. As a result, 8 U.S.C. § 1252(g) applies to the Sissokos' claim. *Compare Wong v. U.S. INS*, 373 F.3d 952, 964 (9th Cir. 2004) ("Wong . . . disclaims any challenge to the execution of the removal itself, but rather asserts that her claims implicate only actions *other than* that removal, or the commencement of proceedings, if any, leading to that removal."). Moreover, we are not persuaded by the Sissokos' contention that 8 U.S.C. § 1252(g) must nevertheless be read to allow them a *Bivens* damages remedy for false arrest.

The Supreme Court has emphasized that "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007); *see also AFGE Local 1 v. Stone*, No. 05-15206, 2007 WL 2482144, *8 (9th Cir. Sept. 5, 2007) (noting "the courts' general reluctance to allow damages as a judicially created remedy for constitutional torts"). *Wilkie* instructs us to examine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial

---

**1**Rocha repeatedly cites 8 U.S.C. § 1225(b)(2)(A) as the basis for Sissoko's detention, but that provision is irrelevant. Its plain language requires a *regular*, not expedited, removal proceeding, including a hearing before an immigration judge: "[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."

Branch to refrain from providing a new and freestanding remedy in damages." 127 S. Ct. at 2598.

[2] In this case, because Sissoko was never issued an expedited removal order, a habeas petition under 8 U.S.C. § 1252(e)(2) could have been successful in remedying his allegedly false arrest.[2] In 1997, as now, that provision limited the remedies available to an alien in Sissoko's expedited removal situation to a habeas petition challenging:

(A)   whether the petitioner is an alien,

(B)   *whether the petitioner was ordered removed under [the expedited removal] section*, and

(C)   whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee . . . , or has been granted asylum . . . .

8 U.S.C. § 1252(e)(2) (emphasis added); *see also id.* § 1252(e)(5) ("In determining whether an alien has been ordered removed under [the expedited removal section], the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner.").[3] If the district court had determined in such a habeas action that Sissoko was not "ordered removed" under the expedited removal section — as he was not, despite his being detained under those provisions — the statutory remedy would have been for the district court "to require that the petitioner be provided a [regular removal] hearing." *Id.* § 1252(e)(4).[4] Such

---

[2]Sissoko did file a habeas petition on September 18, 1997. Because the government then chose to place him in regular removal proceedings, however, the petition was dismissed.

[3]We express no opinion on the constitutionality of these limitations.

[4]We do not decide whether 8 U.S.C. § 1252(g) would apply if Sissoko had been ordered removed after an adverse credible fear determination, thereby eliminating his habeas avenue of relief.

a hearing, as Sissoko's experience bears out, is the first step of full administrative and judicial review of an alien's inadmissibility determination, which was the underlying cause of Sissoko's being placed in expedited removal proceedings and detained. *See id.* ("Any alien who is provided a [regular removal] hearing pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal . . . ."). *Compare id.* § 1252(e)(5) (stating that in a habeas petition regarding expedited removal proceedings "[t]here shall be no review of whether the alien is actually inadmissible").

**[3]** In this limited context, we hold that 8 U.S.C. § 1252(g)'s jurisdiction-stripping language covers the Sissokos' false arrest claim. The claim directly challenges Rocha's decision to commence expedited removal proceedings, and an alternative habeas remedy directly addressing the claimed injury was available through 8 U.S.C. § 1252(e)(2). The only other circuit to have addressed the interaction of § 1252(g) and *Bivens* similarly stressed the importance of alternative remedies in precluding a damages action. *See Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 945 (5th Cir. 1999) ("Aliens wishing to raise [constitutional] challenges in the future should do so either in a petition for review or for habeas corpus."); *see also Khorrami v. Rolince*, 493 F. Supp. 2d 1061, 1068-69 (N. D. Ill. 2007) (following *Humphries*, while commenting that "I am not at all certain that this [Fourth Amendment cause of action] is the type of claim Congress sought to bar when it enacted § 1252(g)," and noting that "Dr. Khorrami had a remedy available to him: he could have raised his challenges in a petition for habeas corpus.").[5] *But see Medina v. United States*, 92

---

[5]We recognize that *Foster v. Townsley*, 243 F.3d 210, 214-15 (5th Cir. 2001), in holding that § 1252(g) precluded jurisdiction over an alien's *Bivens* action, did not address *Humphries'* concern about the availability of some remedy other than a *Bivens* action. There is no indication from *Foster* that the issue was raised in that case, however.

F. Supp. 2d 545, 554 (E. D. Va. 2000) (rejecting *Humphries'* reasoning).

Our reading of 8 U.S.C. § 1252(g) is also consistent with *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ("AADC"). The plaintiffs in that case filed an action alleging constitutional violations based on the government's targeted deportations of members of the Popular Front for the Liberation of Palestine. A damages remedy was not sought. *Id.* at 474 n.3. After concluding that the claims fell within the ambit of § 1252(g), the Court did not end its inquiry, but proceeded to address whether the particular constitutional harms alleged justified reading the statute to allow the lawsuit. In holding that the AADC plaintiffs had not established that such a reading was required by the Constitution, the Court emphasized that "[w]hen an alien's continuing presence in this country is in violation of the immigration laws, the Government does not offend the Constitution by deporting him for the additional reason that it believes him to be a member of an organization that supports terrorist activity." *Id.* at 491-92. Nevertheless, the Court refused to "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous" that its conclusion should be revisited. *Id.* at 490.[6] Most importantly for our purposes, the

---

[6]An instructive subsequent example of a court limiting the reach of § 1252(g) is *Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y. 2006), which refused to apply § 1252(g) to preclude a Fifth Amendment due process-based *Bivens* remedy because "Arar challenges, on constitutional grounds, the decision to send him abroad for torture, pursuant to a purported policy of extraordinary rendition for individuals suspected of terrorist involvement. That goes far beyond a mere challenge to the 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.' " *Id.* at 270-71 (quoting 8 U.S.C. § 1252(g)). *Arar* stressed in its jurisdictional analysis that "defendants have failed to demonstrate that 'Congress has provided an alternative remedy [in the form of the INA],' or to identify an alternative venue through which Arar could have satisfactorily preserved 'some avenue for judicial relief.' " *Id.* at 281 (citations omitted); *see also id.* at 279 n.12 ("Precisely what, if any, remedy might have been available to Arar via habeas is uncertain.").

plaintiffs in *AADC* had administrative and judicial avenues of review and potential redress for the deportation proceedings that were, at least in largest part, the harm resulting from the claimed violations.[7]

**[4]** Accordingly, we conclude that the district court lacked jurisdiction over the Sissokos' claim because it "aris[es] from the decision or action by the Attorney General to commence [removal] proceedings." 8 U.S.C. § 1252(g). The parties shall bear their own costs.[8]

### AFFIRMED in part; VACATED in part; REMANDED.

SKOPIL, Senior Circuit Judge, concurring in part; dissenting in part:

I concur in the decision to withdraw our prior opinion, *Sissoko v. Rocha*, 440 F.3d 1145 (9th Cir. 2006), and to file a revised one. I do not agree, however, with footnote 8 of the revised opinion and, accordingly, I dissent from the majority's decision to include the footnote.

---

[7]Indeed, two of the plaintiffs "were subsequently granted legalization and are no longer deportable based on the original status violations." *Id.* at 473 n.1.

[8]We end by noting our disappointment with the parties' performance in this litigation. At oral argument, we asked the parties repeatedly whether the record contains an expedited removal order and, if not, to explain any documented basis for Sissoko's detention. The parties maintained until Rocha's second petition for rehearing that the record contains no such order and that we should focus on the Form I-275 "Withdrawal of Application for Admission." Both counsels' representations about the record at oral argument, as well as the absence of any reference to the Form I-860 in Rocha's initial petition for rehearing, after our first opinion relied significantly on the record's omission of that form, fall below the standard of advocacy we expect.